541 So.2d 1125 (1989)
Freddie Lee HALL, Appellant,
v.
STATE of Florida, Appellee.
No. 73029.
Supreme Court of Florida.
March 9, 1989.
Rehearing Denied May 11, 1989.
Larry Helm Spalding, Capital Collateral Representative, and Billy H. Nolas and Timothy D. Schroeder, Staff Attys., Office of the Capital Collateral Representative, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen. and Robert J. Landry, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
Freddie Lee Hall, a prisoner under sentence of death and death warrant, appeals the denial of his motion to vacate his sentence pursuant to rule 3.850 of the Florida Rules of Criminal Procedure. Hall also petitions this Court for a stay of execution. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. After oral argument we stayed Hall's execution, with an opinion to follow. We now reverse the trial court's order, vacate Hall's sentence, and direct the trial court to conduct a new sentencing proceeding before a jury. We also direct that this proceeding be held within ninety days from the filing of this opinion.
Hall and accomplice Mack Ruffin were convicted of the February 1978 abduction and murder of a young woman and sentenced to die in the electric chair. This Court affirmed Hall's conviction and sentence, *1126 Hall v. State, 403 So.2d 1321 (Fla. 1981) (Hall I). In September of 1982 a death warrant was signed, scheduling Hall for execution. This Court affirmed the trial court's denial of Hall's rule 3.850 motion, as well as Hall's petition for a writ of habeas corpus. Hall v. State, 420 So.2d 872 (Fla. 1982) (Hall II). The United States District Court for the Middle District of Florida granted a stay of execution, but eventually denied relief. Hall v. Wainwright, 565 F. Supp. 1222 (M.D.Fla. 1983) (Hall III). The eleventh circuit affirmed in part and reversed in part the district court's decision and remanded the case for a new hearing. Hall v. Wainwright, 733 F.2d 766 (11th Cir.1984), cert. denied, 471 U.S. 1107, 105 S.Ct. 2344, 85 L.Ed.2d 858 (1985) (Hall IV). The district court again denied relief and the eleventh circuit affirmed. Hall v. Wainwright, 805 F.2d 945 (11th Cir.1986), cert. denied, ___ U.S. ___, 108 S.Ct. 248, 98 L.Ed.2d 206 (1987) (Hall V). Hall then petitioned this Court for a writ of habeas corpus based on allegations that the sentencing proceeding violated the United States Supreme Court's ruling in Hitchcock v. Dugger, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987). We held that any error in the sentencing proceeding was harmless. Hall v. Dugger, 531 So.2d 76 (Fla. 1988) (Hall VI).
The governor recently signed Hall's second death warrant, scheduling execution for September 20, 1988. Hall filed this, his second rule 3.850 motion with the trial court, alleging, inter alia, that his sentencing proceeding was fundamentally flawed under the Hitchcock ruling.[1] We do not agree with the trial court's ruling that our denial of relief in Hall VI, constitutes a procedural bar under the law of the case and res judicata. This case involves significant additional non-record facts which were not considered in Hall VI because that was a habeas corpus proceeding with no further development of evidence beyond the record. In this case, however, we are aided by the trial court's findings of fact at the rule 3.850 hearing. Moreover, as we have stated on several occasions, Hitchcock is a significant change in law, permitting defendants to raise a claim under that case in postconviction proceedings. Cooper v. Dugger, 526 So.2d 900 (Fla. 1988); Thompson v. Dugger, 515 So.2d 173 (Fla. 1987), cert. denied, ___ U.S. ___, 108 S.Ct. 1224, 99 L.Ed.2d 424 (1988); McCrae v. State, 510 So.2d 874 (Fla. 1987); Downs v. Dugger, 514 So.2d 1069 (Fla. 1987).
Turning to the merits of Hall's Hitchcock claim, we agree that the trial court limited the jury's and its own consideration to the statutorily enumerated mitigating circumstances. Hall VI. Furthermore, it is clear from the record that the trial court's express orders in Hall's trial and his accomplice's trial effectively precluded Hall's counsel from investigating, developing, and presenting possible nonstatutory mitigating circumstances. Because Hitchcock error has occurred, we must determine whether that error was harmless. Delap v. Dugger, 513 So.2d 659 (Fla. 1987).
We believe it is necessary at this point to delineate the nonstatutory mitigating evidence proffered by Hall at the rule 3.850 hearing below. Affidavits presented by Hall's counsel from experts and nonexperts tend to prove numerous nonstatutory mitigating factors.[2] First, Dr. George Barnard, *1127 the expert appointed to determine Hall's sanity and competency to stand trial, stated that although he found Hall to be competent to proceed with the trial, he was not consulted as to whether Hall's condition met the criteria for the finding of a nonstatutory mitigating circumstance.[3] He further stated that there existed substantial evidence of Hall's long history of drug and alcohol abuse, child abuse amounting to torture, organic brain damage possibly resulting from severe, repeated head trauma suffered as a child and adolescent, and a very low intellectual level.
Dr. Jethro Toomer, a psychologist, professor, and diplomate of the American Board of Professional Psychology examined Hall extensively and concluded that Hall suffered from extreme mental and emotional disturbance, compounded significantly by substance abuse throughout his life and at the time of the offense. Dr. Toomer determined that Hall suffered from organic brain dysfunction, including severe impairment of cognitive functions, caused possibly by repeated head trauma. Neuropsychological testing revealed serious brain impairment with moderately abnormal neurometric EEG results, while psychoeducational testing showed Hall to be an illiterate adult.
Dr. Dorothy Lewis, a psychiatrist and professor of Psychiatry at the New York University School of Medicine, evaluated Hall and concluded that he is chronically psychotic, brain damaged, and has severe learning disabilities which are compounded by Hall's use of drugs and alcohol. Dr. Lewis further stated that violent child abuse, organic brain damage, paranoia, and continued substance abuse all contributed to Hall's conduct at the time of the murder. Finally, psychologist Marilyn Feldman examined Hall in conjunction with Dr. Lewis and stated that the results of her testing were consistent with a schizophrenic disorder. Ms. Feldman found that Hall suffers from limited intelligence, organic brain damage, extreme impairment of personality integration, psychotic disorganization, and possible schizophrenia. All of this expert evidence could weigh very heavily in Hall's favor at a properly conducted sentencing hearing.
Just as compelling is the nonexpert evidence of nonstatutory mitigating circumstances. Affidavits from some of Hall's sixteen brothers and sisters paint a stark portrait of a childhood filled with abject poverty, constant violence, and unbearable brutality. Born the sixteenth of seventeen children to a mother and father who fought ceaselessly with shotguns, knives, or whatever weapons were available, Hall's childhood was marked by an existence which can only be described as pitiful. Teachers and siblings alike immediately recognized him to be significantly mentally retarded. This retardation did not garner any sympathy from his mother, but rather caused much scorn to befall him. Constantly beaten because he was "slow" or because he made simple mistakes, Hall felt the wrath of his father, his mother and his neighbors, who had his mother's permission to beat Hall whenever they deemed it proper. Hall's mother would strap him to his bed at night, with a rope thrown over a rafter. In the morning, she would awaken Hall by hoisting him up and whipping him with a belt, rope, or chord.
Violence of this sort was a regular part of Hall's life as a child. Two of his siblings were murdered while Hall was young, while another brother was tied to a tree with a fire set underneath him.
Hall and his brothers and sisters were required by their mother to work in the fields from the time they could walk. During harvesting seasons, Hall would be kept out of school to work. When his school grades suffered as a result of this, he was further beaten severely.
Furthermore, there is substantial evidence that Hall's mother may have been insane, always believing that a famine was imminent requiring the rationing of their food supplies. As a result, Hall and his *1128 brothers and sisters would work fourteen hours a day in the fields and come home to empty dinner plates. In addition to this delusion, there is evidence that Hall's mother was extremely superstitious, believing and encouraging Hall when he reported to her that he saw spirits and ghosts, hallucinations that have continued to plague Hall throughout his life. These observations and assessments of Hall's family background are corroborated and supported by documents and observations of professionals who dealt with him.
All of this expert and lay evidence proves or tends to prove a host of nonstatutory mitigating circumstances. We cannot say beyond a reasonable doubt that the three aggravating circumstances found at Hall's original sentencing proceeding would have outweighed all of this. Therefore, the Hitchcock error cannot be considered harmless. It is of no significance that the trial judge stated that he would have imposed the death penalty in any event. The proper standard is whether a jury recommending life imprisonment would have a reasonable basis for that recommendation. If so, the trial judge could not override the jury's recommendation and sentence Hall to death. Tedder v. State, 322 So.2d 908 (Fla. 1975). Here, there is clearly such a basis. In light of the substantial mitigating evidence, it would be a remarkable exercise in speculation to conclude that the three aggravating circumstances, beyond a reasonable doubt, outweigh this evidence in mitigation. Accordingly, we vacate Hall's death sentence and remand for the trial court to empanel a new jury and conduct a new sentencing proceeding, during which Hall may present his newly developed mitigating evidence.
A few words are in order about how Hitchcock claims should be raised. Hitchcock is of recent origin. Due to the number of death row inmates who have raised Hitchcock claims, many under the time constraints of a pending death warrant, we have been lenient in entertaining the claim, whether made through habeas corpus or rule 3.850 postconviction relief proceedings. Appellate courts are reviewing, not fact-finding, courts. We hold, therefore, that Hitchcock claims should be presented to the trial court in a rule 3.850 motion for postconviction relief and that, after the filing of this opinion, such claims will not be cognizable in habeas corpus proceedings.[4]Stewart v. Wainwright, 494 So.2d 489 (Fla. 1986).
It is so ordered.
EHRLICH, C.J., and SHAW, BARKETT and KOGAN, JJ., concur.
McDONALD, J., dissents with an opinion, in which OVERTON, J., concurs.
GRIMES, J., dissents with an opinion.
McDONALD, Justice, dissenting.
It is inconceivable to me that a Hitchcock[1] error affected the jury's recommendation in this case. Even if the nonstatutory mitigating evidence now sought to be introduced had been presented and the jury had been specifically told it should consider it in the weighing process, when compared with the circumstances of the crime for which Hall stands convicted, and his character as demonstrated by his past and present criminal conduct, I am convinced beyond a reasonable doubt that the outcome would be the same. The trial judge has stated that he would have imposed the death penalty had the omitted nonstatutory evidence been presented. I strongly suspect that in this case a jury override would have been upheld.
Hall was thirty-three years old when this murder was committed. He had a prior conviction and had served prison time for *1129 the crime of rape. When sentenced for this crime, he had also been convicted of the murder of Deputy Coburn, which occurred a few hours after this homicide. The victim in this case was a seven-month pregnant woman who had been abducted from a shopping center, taken into the woods, beaten, robbed, raped, and shot. Under these facts, I perceive no grounds for sympathy for Hall despite the fact that he may have presented evidence of organic brain damage, abused childhood, low intelligence, deprived life, and alcohol and drug abuse. Were he younger and had no prior record, these factors may have been more significant, but even then, when considering the circumstances of this crime and the slaying of a peace officer on the same day, I do not believe that it would make a difference. I agree entirely with the trial judge that any Hitchcock or Lockett[2] error was harmless beyond a reasonable doubt.[3]
Although I am comfortable with applying the Chapman[4] test of harmless error in this case, I have some residual doubt that we should have to. In postconviction proceedings, for whatever reason, it would appear that the Strickland[5] test should be applied, i.e., the burden should be on the petitioner to demonstrate both error and that the error would likely affect the outcome of the proceeding. This is the test employed in ineffective assistance of counsel claims. We have seemingly shifted the burden on the second prong in Hitchcock-related claims to the state. I think the burden should be on Hall to show that the error would likely have affected the outcome. But in any event, as I have previously stated, in applying Chapman I am satisfied that any error in this case was harmless beyond a reasonable doubt.
I agree that in the future all Hitchcock claims should proceed solely by way of a Florida Rule of Criminal Procedure 3.850 proceeding.
OVERTON, J., concurs.
GRIMES, J., dissenting.
I agree with Justice McDonald's analysis that on the facts of this case any violation of the rule of Hitchcock v. Dugger, 107 S.Ct. 1821 (1987), was harmless beyond a reasonable doubt.
NOTES
[1] Hall also raises the following issues: (1) violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); (2) failure of the judge and jury to consider that Hall was brain damaged; (3) violation of Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985); (4) the aggravating circumstance of heinous, atrocious, or cruel is unconstitutional under Maynard v. Cartwright, ___ U.S. ___, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988); (5) the trial court erroneously instructed the jury that seven votes were needed to recommend life imprisonment; and (6) the sentencing instructions improperly shifted the burden of proof in violation of Mills v. Maryland, ___ U.S. ___, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988). The trial court correctly determined that these issues could have and should have been raised on direct appeal or in prior motions for postconviction relief. Accordingly, they are procedurally barred at this stage of the proceedings.
[2] The trial court below found that the proffered affidavits, reports, statements, and other evidence proved the alleged nonstatutory mitigating circumstances by a preponderance of the evidence.
[3] As stated, the trial court's specific rulings foreclosed the possibility of investigating, developing, and presenting nonstatutory mitigating evidence. Therefore, counsel cannot be faulted for failure to consult with Dr. Barnard.
[4] If, when this opinion is filed, inmates under pending death warrants have filed habeas corpus petitions seeking relief under Hitchcock v. Dugger, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987), we will consider those petitions. All Hitchcock claims raised after this opinion is filed, however, must be presented in a rule 3.850 motion for postconviction relief filed with the trial court.
[1] Hitchcock v. Dugger, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987).
[2] Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978).
[3] The judge who heard this motion presided at Hall's trial. His findings on this issue are entitled to considerable weight. See Francis v. State, 529 So.2d 670 (Fla. 1988).
[4] Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).
[5] Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).