United States Court of Appeals,

Eleventh Circuit

No. 95-5375

Non-Argument Calendar.

Theodore WILLIAMS, Petitioner-Appellant,

v.

Harry K. SINGLETARY, Respondent-Appellee.

June 10, 1997.

Appeal from the United States District Court for the Southern District of Florida. (No. 91-8542-CV-NCR), Norman C. Roettger, Jr., Judge.

Before ANDERSON, BLACK and CARNES, Circuit Judges.

PER CURIAM:

Theodore Williams was convicted of second-degree murder and aggravated battery in the Circuit Court of Palm Beach County, Florida. After appealing his conviction in state court, he filed the present petition for a writ of habeas corpus under 28 U.S.C. § 2254. The district court denied the petition, and Williams appeals.

## I. FACTS AND PROCEDURAL HISTORY

On January 3, 1987, Vincent McDaniels was driving a red Mustang in Riveria Beach, Florida. Williams was the front seat passenger in the Mustang. McDaniels drove the Mustang past a group of people gathered at Monroe Heights Park. He drove past once, turned around, drove past a second time, and then stopped in an intersection. Shots were fired from the Mustang into the group. Donald Runner was shot in the head and killed, and Cedric Dunaway was injured by two shots.

Both McDaniels and Williams were arrested and charged with first degree murder and aggravated battery. Williams filed several motions to sever, both before and during trial, all of which were denied. The basis of the motions was the codefendants' mutually antagonistic defenses. McDaniels admitted to having a gun and firing it, but contended that it was a .38 pistol that he fired into the air. McDaniels claimed that Williams fired the 9 millimeter gun that killed Runner and

injured Dunaway. Williams' defense was that there was only one gun involved and that McDaniels fired it.

At trial, McDaniels and Williams advanced their respective defenses during opening and closing arguments and during examination of the witnesses. The eyewitnesses did little to resolve the defendants' conflicting defenses. Those in or near the park offered inconsistent versions of the shooting. One saw only one gun, three saw two guns, and one remembered hearing three guns. The eyewitnesses also disagreed on the number of shots fired, ranging from two or three to 25 or 30. One eyewitness testified that she saw Williams leaning over shooting out of the driver's side window while another saw Williams hanging out of the passenger's side window. The three passengers in the back seat of the Mustang testified that there was only one gun and further testified that McDaniels was the one who fired the shots. McDaniels testified and offered his version of the shooting: Williams fired into the group while McDaniels fired into the air. Williams did not testify.

The jury convicted both McDaniels and Williams of second degree murder and aggravated assault. Williams appealed, arguing that the trial court erred in not severing his trial from McDaniels'. Williams contended that his defense and McDaniels' defense were mutually exclusive and antagonistic. Because McDaniels' defense was based on the theory that Williams fired the shots, Williams argued that he was in essence doubly prosecuted—by the state and by his codefendant.

The Florida District Court of Appeals rejected Williams' argument. *Williams v. State,* 567 So.2d 9 (Fla.Dist.Ct.App.1990). That court held the trial court had not abused its discretion because Williams was allowed to and did conduct lengthy cross-examination of the witnesses, including his codefendant McDaniels. *Id.* at 10. Moreover, the parties had conducted extensive pretrial discovery, so Williams was not surprised by any of the testimony. *Id.* Nor was the evidence so complex that the jury would be confused by any conflicting defenses. *Id.* The Florida Supreme Court declined to accept jurisdiction. *Williams v. State,* 577 So.2d 1331 (Fla.1991).

Williams filed the present § 2254 petition in federal district court, raising only the issue of the state trial court's refusal to sever Williams' trial from McDaniels'. The district court referred the matter to a magistrate judge, who recommended that the petition be denied. The magistrate judge

examined Williams' claim under the four-step test set forth in *Smith v. Kelso,* 863 F.2d 1564 (11th Cir.1989), and concluded that Williams failed to meet the third step of the *Smith* analysis, the compelling prejudice step. Looking only at the state's case in chief, the magistrate judge determined that there was sufficient evidence apart from McDaniels' defense to find Williams guilty of the shooting under the state's aiding and abetting theory. Because Williams failed to establish that he suffered compelling prejudice from the refusal to sever, the magistrate judge recommended that the petition be denied.

The district court adopted the recommendation of the magistrate judge and denied Williams' petition. This appeal followed.

## II. ANALYSIS

A habeas petitioner seeking relief for a trial court's refusal to sever a codefendant must show that the refusal rendered the trial fundamentally unfair. *Johnson v. Dugger,* 817 F.2d 726, 728 (11th Cir.1987). In *Smith v. Kelso,* 863 F.2d 1564 (11th Cir.1989), this Court established a four-step test for determining whether a defendant's nonsevered trial was fundamentally unfair. Courts should proceed step-by-step through the following four questions:

(1) Do the alleged conflicts with co-defendants' defenses go to the essence of the appellant's defense?

(2) Could the jury reasonably construct a sequence of events that accommodates the essence of both defendants' defenses?

(3) Did the conflict subject the appellant to compelling prejudice?

(4) Could the trial judge ameliorate the prejudice?

*Id.* at 1568.

In examining the third step of establishing compelling prejudice, the *Smith* court explained, "This is essentially a requirement that the defendant prove the conflict [between the defenses] was not harmless." *Id.* at 1571 (citations omitted). The court went on to hold that the defendant in *Smith* had not established compelling prejudice because "evidence other than [the codefendant's] testimony was sufficient to convict." *Id.* The fit between the jury's verdict and the other evidence in *Smith* indicated that the jury could have convicted the defendant as it did without the codefendant's

testimony. *Id.* at 1571-72. Because any error resulting from the lack of severance was harmless in that sense, the defendant in *Smith* failed to establish compelling prejudice and thus was not entitled to habeas relief. *Id.*

The magistrate judge in the present case followed the *Smith* four-step analysis. After concluding that the defendants' defenses were antagonistic and that the jury could not reasonably accommodate both defenses, the magistrate judge proceeded to the third step. Following *Smith,* the judge held that Williams had failed to establish compelling prejudice because evidence apart from that presented by McDaniels was sufficient for the jury to convict as it did.

On appeal, Williams contends that the magistrate judge applied the wrong legal standard in the third step of the *Smith* analysis. Williams argues that the Supreme Court effectively overruled *Smith* and instituted a new rule of decision in *Brecht v. Abrahamson,* 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). The Court in *Brecht* addressed the question of which harmless error standard should be applied in deciding whether to grant habeas relief for constitutional violations involving trial errors. *Id.* at 627, 113 S.Ct. at 1716. The Court adopted the harmless error standard of *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946), and held that a constitutional trial error is not harmless if it "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht,* 507 U.S. at 637, 113 S.Ct. at 1722 (citation omitted). Relying on the language in *Smith* explaining that compelling prejudice is essentially a question of harmfulness, Williams contends that the *Brecht* harmless error standard supplanted the *Smith* compelling prejudice inquiry.

We reject Williams' construction of *Brecht.* A harmless error inquiry necessarily entails a two-step process. A court must first find an error before it can determine whether that error is harmless. *Brecht* applies only at the second step of the inquiry in determining if an already established error is harmless. Nothing in *Brecht* suggests its harmless error standard should apply at the first step of the inquiry and change what it takes to establish an error in the first place. Instead, in *Brecht,* the Supreme Court begins its discussion of the harmless error standard only after first determining that the state had improperly used the defendant's post-*Miranda* silence in violation

of *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). *Brecht,* 507 U.S. at 627-30, 113 S.Ct. at 1716-17.

This two-step analysis complies with this Court's precedent. We have consistently applied the *Brecht* harmless error standard only after determining that there was an error. *See Booker v. Singletary,* 90 F.3d 440, 442-43 (11th Cir.1996) (affirming prior finding of *Hitchcock* violation and holding that under *Brecht* standard, state had not established harmlessness); *Delguidice v. Singletary,* 84 F.3d 1359, 1364 (11th Cir.1996) (first finding Sixth Amendment error and then examining whether that error was harmless under *Brecht* ); *Smith v. Singletary,* 61 F.3d 815, 816 (11th Cir.1995) (finding *Hitchcock* violation, then examining whether that violation was harmless under *Brecht* ), *cert. denied,* --- U.S. ----, 116 S.Ct. 972, 133 L.Ed.2d 892 (1996); *Horsley v. State of Ala.,* 45 F.3d 1486, 1492 (11th Cir.) (assuming *Lockett/Hitchcock* error but finding error to be harmless under *Brecht*), *cert. denied,* --- U.S. ----, 116 S.Ct. 410, 133 L.Ed.2d 328 (1995); *Glock v. Singletary,* 36 F.3d 1014, 1022 (11th Cir.1994) (finding *Bruton* violation and then examining for harmlessness under *Brecht*), *vacated on other grounds,* 65 F.3d 878 (11th Cir.1995); *Bonner v. Holt,* 26 F.3d 1081, 1082-83 (11th Cir.1994) (analyzing for harmlessness under *Brecht* after state conceded Sixth Amendment violation); *Bolender v. Singletary,* 16 F.3d 1547, 1566-67 (11th Cir.1994) (finding no *Hitchcock* violation but holding in the alternative that any such violation would be harmless under *Brecht* ); *Duest v. Singletary,* 997 F.2d 1336, 1337 (11th Cir.1993) (engaging in *Brecht* harmlessness analysis after state conceded existence of *Johnson* violation); *Cumbie v. Singletary,* 991 F.2d 715, 724-25 (11th Cir.1993) (finding confrontation clause violation under *Coy* and then applying *Brecht* harmlessness standard).

*Smith* sets forth a methodical four-step process for determining when a refusal to sever rises to the level of a constitutional violation. A habeas petitioner must satisfy that four-step test before moving on to the *Brecht* harmless error standard. Nothing in *Brecht* purports to address when a failure to sever is a constitutional violation in the first place. We will not stretch *Brecht* beyond its holding, which is that the *Kotteakos* standard applies in determining when an *already established* constitutional violation nonetheless amounts to harmless error.

The error in Williams' reasoning becomes clearer when one takes into account *Smith's* application to federal criminal cases. This Court has adopted the four-step *Smith* analysis when reviewing on direct appeal whether a federal district court erred in not granting a motion to sever. *United States v. Knowles,* 66 F.3d 1146, 1158-59 (11th Cir.1995) (borrowing compelling prejudice standard from *Smith* in direct appeal), *cert. denied,* --- U.S. ----, 116 S.Ct. 1449, 134 L.Ed.2d 568 (1996); *United States v. Castillo-Valencia,* 917 F.2d 494, 498-99 (11th Cir.1990) (borrowing *Smith* four-step analysis verbatim on direct appeal of conviction). *Brecht* applies only to habeas review of state convictions, so *Smith's* application to federal criminal cases on direct appeal remains unchanged since *Brecht.* As a result, on direct appeal of a federal criminal conviction, we still must apply the stricter compelling prejudice standard rather than the looser *Brecht* standard. Adopting Williams' argument that *Brecht* supplanted the *Smith* analysis would have the effect of making relief easier to obtain for a state defendant on collateral review than for a federal defendant on direct review. That would turn federalism on its head. Nothing in *Brecht* countenances such a bizarre result.

Williams contends that this Court has already supplanted *Smith's* compelling prejudice with *Brecht's* harmless error standard. He says that we did so in *Glock v. Singletary,* 36 F.3d 1014 (11th Cir.1994), *vacated on other grounds,* 51 F.3d 942 (11th Cir.), *aff'd,* 65 F.3d 878 (11th Cir.1995). In *Glock,* we addressed the introduction of a codefendant's confession in violation of *Bruton v. United States,* 391 U.S. 123, 135-36, 88 S.Ct. 1620, 1627-28, 20 L.Ed.2d 476 (1968). After concluding that the introduction of the confession violated the *Bruton* rule, we next addressed whether that error was harmless under *Brecht. Glock,* 36 F.3d at 1022. Therefore, the *Glock* decision is but one in a long line of cases that apply *Brecht after* a constitutional violation has been found. Moreover, *Glock* mentions severance only once, in a footnote discussion of whether the failure to sever could constitute a structural error and thereby fall outside *Brecht. Id.* at 1022-23 n. 19. *Glock* in no way changes the four-step analysis for determining whether a constitutional violation relating to nonseverance has occurred under *Smith.*

III. CONCLUSION

Because the magistrate judge and district court applied the proper legal standard, we AFFIRM the district court's denial of Williams' petition for writ of habeas corpus.