729 So.2d 909 (1999)
William M. WHITE, Appellant,
v.
STATE of Florida, Appellee.
No. 88,686.
Supreme Court of Florida.
March 11, 1999.
Rehearing Denied April 19, 1999.
*910 Richard L. Jorandby, Public Defender, and Steven H. Malone, Assistant Public Defender, Fifteenth Judicial Circuit, West Palm Beach, Florida, for Appellant.
Robert A. Butterworth, Attorney General, and Katherine V. Blanco, Assistant Attorney General, Tampa, Florida, for Appellee.
PER CURIAM.
William White appeals the trial court's order denying his motion to vacate judgment and sentence pursuant to Florida Rule of Criminal Procedure 3.850. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm the trial court's order as it relates to appellant's conviction; however, based on Hitchcock v. Dugger, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987), we vacate appellant's death sentence and remand for a new sentencing proceeding before a jury. This proceeding is to begin within 120 days of this decision becoming final. Any postponement must be granted by the Chief Justice of this Court.

I. BACKGROUND
Appellant was convicted of the first-degree murder of Gracie Mae Crawford. The facts of the crime are detailed in our opinion on direct appeal.
White was a member of a Kentucky chapter of the Outlaws, a motorcycle gang, but was visiting the Orlando chapter. A group of the Outlaws, accompanied by some girl friends, visited an Orlando nightclub where they met Gracie Mae Crawford. Gracie Mae accompanied some of the Outlaws back to their Orlando clubhouse. Soon after returning to the clubhouse, White retired to a bedroom with his girl friend. Sometime thereafter White was called by Richard DiMarino who stated that Crawford liked blacks and that they had to teach her a lesson. White dressed and went into the kitchen area where he joined DiMarino and Guy Ennis Smith in severely beating Crawford. Whether DiMarino or White led the assault is unclear, but one witness testified of White's hitting Crawford with his fist and knocking her to the floor. After the beating, DiMarino and White placed Crawford in the middle of the front seat of White's girl friend's car. White started driving but along the way stopped the car and DiMarino drove the car to the end of a deserted road. (The victim, White and DiMarino had done a lot of drinking that evening, but White's girl friend testified that he knew what he was doing.) After they stopped the car, DiMarino and White pulled Crawford from the car, passed her over a barbed wire fence, and laid her on the ground. White then straddled her, took out his knife, stabbed her fourteen times and slit her throat. He handed the knife to DiMarino who also cut her throat. Crawford died as a result of the wounds inflicted upon her.
While leaving the area White and DiMarino ran out of gas at the Seaworld parking lot and were later identified by Seaworld security guards who had given them gas. White and DiMarino went back and picked up the body of the deceased and thereafter discarded it at a different place. The body was discovered that afternoon.
*911 White v. State, 415 So.2d 719, 719-20 (Fla. 1982). After a penalty phase proceeding in which defense counsel proffered no witnesses or evidence, the advisory jury unanimously recommended that appellant be sentenced to death. The trial court, finding that the three aggravating circumstances[1] outweighed the sole statutory mitigating circumstance,[2] sentenced appellant to death in accordance with the unanimous jury recommendation. We affirmed the conviction and sentence. Id. at 719-21. The United States Supreme Court denied certiorari review on November 29, 1982. See White v. Florida, 459 U.S. 1055, 103 S.Ct. 474, 74 L.Ed.2d 622 (1982).
Appellant filed this initial rule 3.850 motion in 1983. In 1987, while appellant's rule 3.850 motion was pending, the Supreme Court issued its opinion in Hitchcock v. Dugger, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987). Hitchcock held that a Florida jury charge which precluded the trial court and the advisory jury from considering nonstatutory mitigation was unconstitutional. Appellant subsequently filed a petition for habeas relief based on Hitchcock. The trial court stayed further proceedings in this postconviction motion until final disposition of the habeas petition. We rejected appellant's claim for relief, concluding that "[t]he charge which may have limited the jury to a consideration of statutory mitigating circumstance was clearly harmless." White v. Dugger, 523 So.2d 140, 141 (Fla.), cert. denied, 488 U.S. 871, 109 S.Ct. 184, 102 L.Ed.2d 153 (1988). The trial court subsequently held an evidentiary hearing on most of appellant's claims and denied relief on all claims by order dated April 16, 1996. See State v. White, No. CR78-1840, order at 6 (Fla.Cir.Ct. Apr. 16, 1996) (hereinafter Order). In this appeal, appellant raises eight issues.[3] We reject as without merit issues four and eight.[4]

II. ISSUES ON APPEAL

A. Ineffective Assistance of Guilt-Phase Counsel
Appellant argues that he was denied effective assistance of counsel during the guilt phase of his trial. To warrant relief under an ineffective assistance claim, appellant carries the heavy burden of establishing a deficient performance and a reasonable probability that the outcome of the proceeding would have been different absent the deficient performance. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Appellant argues he *912 received ineffective assistance of counsel during the guilt phase of his trial because his lawyer: (1) failed to object when the State amended its statement of particulars midway through the trial; (2) failed to pursue an intoxication defense; (3) failed to obtain a ruling on his objection to collateral bad act testimony; and (4) failed to object to bad character evidence and evidence creating sympathy for the victim. The trial court below addressed ineffectiveness only as to a few claims. The court did, however, find as to all claims regarding guilt phase counsel that appellant failed to establish prejudice. Order at 6.
In examining counsel's performance, courts are required to make every effort to eliminate the distorting effects of hindsight by evaluating the performance from counsel's perspective at the time and indulge a strong presumption that counsel has rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Blanco v. Wainwright, 507 So.2d 1377, 1381 (Fla.1987). After carefully reviewing the trial record, the record of the evidentiary hearing and the arguments made here, we conclude that the defendant failed to establish that his lawyer's performance was constitutionally deficient.
Failing to object when the State moved to amend its statement of particulars does not constitute deficient performance because the amendment did not prejudice the defendant. See Stang v. State, 421 So.2d 147, 149 (Fla.1982) (amendments to statement of particulars is allowable if it does not prejudice defendant). Moreover, it is evident from the record that appellant's counsel decided as a matter of strategy not to rely upon intoxication as a defense but rather to rely upon a contention that appellant was not the major actor. Defense counsel persuaded the trial court, over the State's objection, to instruct the jury on the lesser crime of accessory after the fact. This strategy was based partly upon the fact that the State had several witnesses including a former breathalyser operator who saw appellant at or around the time of the murder and would have testified that appellant was not intoxicated. Thus, this claim is without merit. See Provenzano v. Singletary, 148 F.3d 1327, 1332 (11th Cir. 1998) ("In order to show that an attorney's strategic choice was unreasonable, a petitioner must establish that no competent counsel would have made such a choice."). None of the other alleged failures describe conduct which is outside the range of what is expected of reasonably competent counsel. See Muhammad v. State, 426 So.2d 533, 538 (Fla. 1982) ("Whether to object is a matter of trial tactics which are left to the discretion of the attorney so long as his performance is within the range of what is expected of reasonably competent counsel."). The evidence of appellant's culpability was overwhelming. "The co-defendant, DiMarino, testified at length that [appellant] beat the victim prior to the murder, accompanied DiMarino to kill the victim at a remote spot, assisted the victim over a fence, then repeatedly stabbed her and finally slit the victim's throat." Order at 6. We affirm the trial court's judgment denying appellant relief on this claim.

B. Brady and Giglio Claims
In this claim, appellant contends that the State failed to disclose all the essential details of the deal with DiMarino, the State's chief witness, in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and then in violation of Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), allowed DiMarino to testify falsely when he omitted several aspects of the agreement. We address each claim seriatim. At trial, the State presented the testimony of DiMarino. By this time, DiMarino had been convicted of third-degree murder and other felonies in connection with this crime and sentenced to concurrent terms of fifteen years' imprisonment. DiMarino testified that it was appellant who stabbed Ms. Crawford fourteen times and slit her throat. On cross-examination, DiMarino testified that in exchange for his testimony the State promised protection from the Outlaws gang and that sentences on pending charges would run concurrently with his sentence on Crawford's murder. Appellant now claims that the State failed to disclose: (1) a written memorandum in which the State agreed not to seek enhanced punishment although DiMarino *913 qualified as a habitual offender and to drop other charges; and (2) a $1,000 payment to DiMarino's wife. Appellant claims that the failure to provide this information, which would have been used to impeach DiMarino, resulted in prejudice. We disagree.
The trial court's order denying relief on this issue focused on the materiality of the evidence. To demonstrate materiality, the defendant must establish a reasonable probability that the outcome of the case would have been different. See Kyles v. Whitley, 514 U.S. 419, 435, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) (citing United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)). In analyzing this issue the court explained that courts must focus on whether the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict. Id. at 435, 115 S.Ct. 1555. The trial court below concluded that this additional information was not material.
[D]efense counsel conducted an excellent cross-examination of DiMarino. [Appellant's] attorney showed the jury that DiMarino had much to gain by his testimony. Defense counsel brought out that DiMarino lied when it was to his benefit, that he obtained a better sentencing deal via his testimony, that he would be kept safe from the Outlaws and that his girlfriend and child would be taken care of. Even though some of the details of the agreement were not presented to the jury, counsel more than sufficiently acquainted the jury with the fact that there was an agreement between DiMarino and the State and counsel introduced most of the agreement's major components. The additional material of which [appellant] now complains would not have added to DiMarino's impeachment. Consequently, this court finds there is no reasonable probability that this evidence, if it had been presented at trial, would have changed the outcome.
Order at 7-8. We agree with the trial court's analysis of this issue and, after reviewing the entire trial record, find that the cumulative effect of the State's failure to disclose the memorandum does not undermine our confidence in the jury's conviction. For this same reason, we do not find any error under Giglio. See Craig v. State, 685 So.2d 1224, 1226 (Fla.1996). Therefore, we affirm the trial court's order with respect to this issue.
Appellant also claims the State committed a discovery violation when it failed to disclose its interrogation of Ann Hicks. As part of the Crawford murder investigation, Detective Martin of the Orange County Sheriff's Department interviewed Ms. Hicks at her home in Georgia on October 13, 1978. Hicks talked with Crawford several times the week Crawford was murdered. Crawford told Hicks that she was involved with the Outlaws motorcycle gang, and she thought they had murdered a friend of hers. She also thought her life was in danger. In one of her conversations with Hicks, Crawford gave the name of several gang members she feared. This list did not include appellant. Appellant claims that this information could have been used to raise doubt as to appellant's culpability. The trial court ruled that this evidence was not material.
Ms. Hicks's statement indicated that the victim was afraid of certain members of the Outlaws, which she listed by name. Allegedly [appellant's] name was not on that list. Merely because the victim was allegedly unafraid of [appellant], does not mean that he did not kill her. There is simply no possibility that this evidence would have altered the outcome of the trial, especially in light of DiMarino's testimony.
Order at 8. We agree with this analysis and affirm the trial court's order with respect to this issue.

C. Hitchcock Claim
Appellant's dispositive argument is that his advisory jury was improperly instructed to consider only statutory mitigating factors in violation of the Eighth and Fourteenth Amendments to the United States Constitution as set forth in Hitchcock v. Dugger, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987), Skipper v. South Carolina, 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986), and Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (plurality opinion). *914 The trial court below ruled that appellant was barred from raising this claim based on our rejection of a similar claim in White v. Dugger, 523 So.2d 140 (Fla.1988). Appellant argues that this ruling is contrary to Hall v. State, 541 So.2d 1125 (Fla.1989). We agree and reverse the trial court's judgment on this issue.
A little more than a year after we rejected appellant's Hitchcock claim in 1988, we issued our opinion in Hall, a case in which we directed that Hitchcock claims must be made in a rule 3.850 motion. Hall's procedural posture was similar to that of appellant's case. In Hall, the defendant initially filed a habeas petition seeking relief under Hitchcock. We denied relief. Hall subsequently filed a rule 3.850 motion in which he cited to nonstatutory mitigation adduced for the first time at the evidentiary hearing on his rule 3.850 motion. This Court ruled that its previous adjudication of Hall's habeas petition did not necessarily constitute a procedural bar to Hall subsequently raising a Hitchcock claim in a rule 3.850 motion. We said:
We do not agree with the trial court's ruling that our denial of [Hall's habeas petition] constitutes a procedural bar under the law of the case and res judicata. This case involves significant additional non-record facts which were not considered in [Hall's habeas petition].... In this case, however, we are aided by the trial court's findings of fact at the rule 3.850 hearing. Moreover, as we have stated on several occasions, Hitchcock is a significant change in law, permitting defendants to raise a claim under that case in postconviction proceedings.
Hall, 541 So.2d at 1126.
In Alvord v. State, 694 So.2d 704, 707 (Fla.1997), we explained that in order to avoid a procedural bar in this situation, the defendant must present evidence at the evidentiary hearing which is substantially different from the evidence which this Court considered in reviewing the habeas petition. Thus, in the present case, to determine whether our 1998 decision on the Hitchcock issue is a procedural bar to White's 3.850 Hitchcock claim, the mitigating evidence presented at trial must be contrasted with that adduced at the evidentiary hearing below. At trial, defense counsel proffered no witnesses during the penalty phase but only a brief argument. In his 1988 habeas petition to this Court, appellant argued that trial judge and the advisory jury failed to consider the following record nonstatutory evidence: (1) residual doubt as to appellant's guilt; (2) the complicity of a codefendant; and (3) appellant's use and consumption of alcohol on the day of the murder. We held the failure of the court and jury to consider this evidence was harmless. White, 523 So.2d at 141.
The relevant assertions in the present 3.850 motion and the evidence presented at the 3.850 hearing focused on three general areas: (1) an abusive childhood; (2) alcohol and drug dependency resulting in mental impairment; and (3) a subservient personality susceptible to the domination of others. Appellant produced his mother, sister, and stepsister. All three testified without contradiction that appellant's father was an alcoholic who frequently abused appellant both physically and emotionally. Several other witnesses testified without contradiction that appellant himself is an alcoholic. Appellant began drinking heavily at around eleven years of age when his father would take him to bars. Dr. Caddy, a forensic psychologist, testified based on the additional evidence that appellant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was substantially impaired. Dr. Caddy also opined that appellant's alcoholism led to significant impairment in organic mental functioning and an inability to process information in a normal manner. Finally, Dr. Caddy stated that appellant's personality was subservient in nature based on a lack of self-worth and that it was possible he committed the murder at the direction of others.
This was all relevant evidence which the sentencing court and advisory jury should have at least considered, but it was precluded from doing so. As in Hall, this case involves significant additional nonrecord facts which were not considered in review of appellant's habeas petition because there was no further development of evidence beyond the trial record. *915 We find that this evidence was substantially different from that which was before this Court when it reviewed appellant's habeas petition. Because this evidence was substantially different, we distinguish this case from Alvord. We conclude that the trial court erred in ruling this claim to be procedurally barred.
We now turn to the merits of the case. In capital cases, the Supreme Court has ruled that "the sentencer" may not refuse to consider or be precluded from considering any relevant mitigating evidence. Hitchcock, 481 U.S. at 394, 107 S.Ct. 1821. Though our 1988 opinion may not have expressly stated, we conclude that the sentencing proceeding was afflicted with Hitchcock error. The jury instruction in this case closely parallels the instruction held inadequate in Hitchcock, a case tried at approximately the same time and in the same judicial circuit as this case. In Hitchcock, the trial court instructed the jury, "The mitigating circumstances which you may consider shall be the following" and listed the statutory mitigators. Id. at 398, 107 S.Ct. 1821. In this case, the judge instructed the jury, "The mitigating circumstances which you may consider, if established by the evidence, are these: [listing the statutory mitigating factors]." These instructions are indistinguishable. Moreover, the prosecutor in this case advised the jury in closing argument that the judge would instruct them on the relevant mitigating circumstances.
Having determined that the trial court committed Hitchcock error, we must now determine whether that error was harmless. The Eleventh Circuit recently provided the following guidance for consideration of harmlessness in respect to Hitchcock error:
Assuming arguendo that there was a Hitchcock error, the error was harmless beyond a reasonable doubt. We employ the Brecht v. Abrahamson, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), harmless error analysis to the Hitchcock error. See Williams v. Singletary, 114 F.3d 177, 180 (11th Cir.1997) ("Brecht applies only at the second step of the inquiry in determining if an already established error is harmless."), cert. denied, ___ U.S. ___, 118 S.Ct. 712, 139 L.Ed.2d 654 (1998).
In Booker v. Singletary, 90 F.3d 440, 442 (11th Cir.1996), we stated:
In Brecht, the Court held that Chapman's [Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)] standard of "harmless beyond a reasonable doubt" was inapplicable to habeas corpus review. In place of Chapman, the Court substituted the standard established by Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), for resolving the harmless error issue on the direct review of a criminal conviction. The Kotteakos standard asks whether the error "had substantial and injurious effect or influence in determining the jury's verdict." By substituting Kotteakos' standard for Chapman's, the Court in Brecht made it easier for a state to show that a constitutional violation did not prejudice an habeas petitioner's case.
90 F.3d at 442 (11th Cir.1996) (citations omitted). We have held that Hitchcock errors are "trial type" errors governed by Brecht. See, e.g., Horsley v. State of Ala., 45 F.3d 1486, 1492 (11th Cir.1995); Bolender v. Singletary, 16 F.3d 1547 (11th Cir. 1994).
Sims v. Singletary, 155 F.3d 1297, 1315 (11th Cir.1998); see also Baldwin v. Johnson, 152 F.3d 1304, 1324 n. 22 (11th Cir.1998) ("A Hitchcock error is harmful only if it `had substantial and injurious effect or influence in determining the jury's [or the court's] verdict.'").
We have considered the trial record together with the record of the evidentiary hearing and applied the analysis set forth by the federal circuit court. As we have stated, this consideration reveals that in the penalty phase proceeding no evidence was presented. Mitigation concerning alcohol intoxication was limited to appellant's purported intoxication at the time of the murder. There was no evidence at the trial which went to the history of alcohol abuse as nonstatutory mitigation. Moreover, there was no trial testimony concerning appellant's impoverished and abusive childhood. Based upon our consideration *916 of the trial record and the record below, we find that the State cannot show that the Hitchcock error did not have a substantial and injurious effect or influence in determining the jury's recommendation. This finding requires that we remand this case for a new penalty phase. Our resolution of this issue moots appellant's issues two, six, and seven, which relate to the penalty phase of his trial.

III. CONCLUSION
In sum, we affirm the trial court's judgment denying relief as to appellant's guilt phase issues. We reverse, however, the trial court's judgment denying relief as to appellant's sentence based on the Hitchcock claim. All other challenges to appellant's death sentence are moot. We remand this case to the trial court with directions that it conduct a new sentencing proceeding before a jury and that this proceeding begin within 120 days of this decision becoming final.
It is so ordered.
HARDING, C.J., SHAW and WELLS JJ., and OVERTON and KOGAN, Senior Justices, concur.
ANSTEAD and PARIENTE, JJ., concur in result only.
NOTES
[1] The trial court found: (1) the murder was committed during the course of a kidnapping; (2) the murder was committed to disrupt or hinder enforcement of laws; and (3) the murder was heinous, wicked, and cruel.
[2] The trial court found that appellant had no prior violent felony conviction.
[3] Appellant's issues are: (1) whether the trial court erred in ruling that appellant's Hitchcock claim was procedurally barred; (2) whether appellant received ineffective assistance of counsel during his penalty phase; (3) whether appellant received ineffective assistance of counsel during the guilt phase; (4) whether the trial court erred in denying his motion for transcription and review of grand jury proceedings; (5) whether the court erred in denying appellant's claims based on Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); (6) whether the court prejudged appellant's death sentence; (7) whether appellant's death sentence is disproportionate; and (8) whether the court erred in striking certain claims without an evidentiary hearing.
[4] The trial court properly ruled that appellant's issue four was procedurally barred. See Roberts v. State, 568 So.2d 1255, 1258 (Fla.1990). With respect to issue eight, we find that the trial court properly rejected the following claims because either they were or should have been presented on direct appeal: (1) appellant was denied counsel during the initial portion of his trial; (2) death sentencing is unreliable; (3) the trial court applied an improper standard in rejecting mental health mitigation; (4) Florida's death penalty and electrocution in particular are unconstitutional; (5) the jury's sense of responsibility was diminished by the judge and State; (6) the State improperly sought sympathy for the deceased during the guilt phase and penalty phase; (7) the jury was misinformed about the nature of a life sentence; (8) the trial court erred in allowing counsel to waive the intoxication defense without appellant's consent; (9) the trial court erred in allowing numerous theories of felony murder, which were not defined and not supported by the evidence, to go to the jury; and (10) the trial court erred in instructing the jury not to consider sympathy and that mitigators must outweigh aggravators. See Medina v. State, 573 So.2d 293, 295 (Fla.1990); Blanco v. Wainwright, 507 So.2d 1377, 1380 (Fla.1987).