EMAS, J.
 

 Appellant, Yancy C. Lightner, appeals an order denying his motion for postcon-viction relief pursuant to Rule 3.850, Florida Rules of Criminal Procedure. We affirm.
 

 I. BACKGROUND
 

 Lightner was arrested and charged with three counts of armed robbery with a firearm. He was tried by a jury and convicted as charged. The trial court imposed a life sentence on each count. Lightner’s convictions and sentences were affirmed on appeal.
 
 Lightner v. State,
 
 948 So.2d 768 (Fla. 3d DCA 2007). Lightner filed a timely motion for postconviction relief, raising several claims, including a claim that his trial counsel provided ineffective assistance by failing to properly investí-
 
 *284
 
 gate, interview and present, at trial, two exculpatory witnesses.
 
 [1]
 
 The trial court held an evidentiary hearing on October 5, 2007, and thereafter denied Lightner’s motion.
 

 II. EVIDENTIARY HEARING
 

 The record below, including the evidence elicited at the evidentiary hearing on this claim, establishes the following:
 

 The crimes occurred on October 28, 2000, during which three different victims were robbed at gunpoint. Lightner initially was represented by the public defender’s office. In October 2001, the public defender’s office withdrew and the trial court appointed Mr. Fernandez to represent Lightner. Mr. Fernandez has been an attorney for more than thirty years. Mr. Fernandez met with Lightner and Lightner told Mr. Fernandez that he (Lightner) was in Key West at the time of the offense, and that he had two alibi witnesses who would verify this: Light-ner’s girlfriend (Ms. Walker) and his girlfriend’s mother (Ms. Peoples). Based upon this information, Mr. Fernandez pursued this alibi defense for more than a year during the pretrial stages of the case. Mr. Fernandez experienced great difficulty contacting Ms. Walker; he left messages at one of the phone numbers given to him by Lightner, but never received a return call. The other phone number provided by Lightner was disconnected. Mr. Fernandez contacted Lightner and followed up with several letters to Lightner, advising Lightner of the relative lack of success in pursuing these witnesses. Mr. Fernandez continued his investigation of Lightner’s alibi defense based upon Lightner’s avowal that he was not even in Miami-Dade County at the time the crimes were committed.
 

 At some point, Mr. Fernandez finally was able to reach both Ms. Walker and Ms. Peoples; however, it soon became apparent that neither Ms. Walker nor Ms. Peoples could verify Lightner’s hoped-for alibi. The pursuit of an alibi defense came to an abrupt end with the September 20, 2002, deposition of Ms. Peoples. During that deposition, Ms. Peoples testified that she received a collect call from Lightner (who was in custody at the time) and that Lightner had asked her to say that he was at her house in Key West at the time in question. Ms. Peoples acknowledged that this was not true and that she did not know where Lightner was at the time of the crimes.
 

 When Mr. Fernandez advised Lightner of Ms. Peoples’ statements, Lightner abandoned the alibi defense. His new defense, he told Mr. Fernandez, was that he was at the scene prior to the crimes, but he had left before any robbery occurred. Light-ner told Mr. Fernandez he had two other witnesses who would verify this: Mr. Tucker and Mr. Wallace.
 

 Mr. Fernandez then began investigating this new defense and spoke with Mr. Tucker and Mr. Wallace. However, Mr. Fernandez determined that Mr. Wallace would not be helpful to the defense. Mr. Wallace could not provide any details about what happened that night, making his testimony less than credible. Further, Mr. Wallace was making himself unavailable and Mr. Fernandez was unable to get Mr. Wallace to agree to testify. In addition, Mr. Wallace was a minor, and Mr. Fernandez needed the assistance of Mr. Wallace’s mother to bring him in. No such assistance was forthcoming.
 

 
 *285
 
 Mr. Fernandez also pursued Mr. Tucker as a witness for this new defense. Mr. Fernandez did make contact, and spoke with Mr. Tucker. Mr. Tucker was eventually deposed by the State, and Mr. Fernandez determined that he did not believe Mr. Tucker was telling the truth. Mr. Fernandez believed he would be suborning perjury by calling Mr. Tucker as a witness. Mr. Fernandez sent Lightner a letter advising him that he did not intend to call Mr. Wallace or Mr. Tucker as witnesses at trial. Lightner received the letter and acknowledged that he did not disagree with Mr. Fernandez’s decision.
 

 Soon thereafter, Mr. Fernandez withdrew from the case, citing “irreconcilable differences.” The evidence reveals that Mr. Fernandez told the trial court that his specific reason for withdrawal was that his client had wanted him to present testimony of witnesses whom Mr. Fernandez believed would be perjuring themselves.
 

 In March of 2003 (five months before trial), Mr. Santos was appointed to represent Lightner. Mr. Santos has been an attorney for nearly thirty years, practicing primarily criminal defense. Mr. Santos and Mr. Fernandez have known each other for many years, and each covers hearings for the other when they have scheduling conflicts. In fact, Mr. Santos had had contact with Lightner even before he formally began representing him, and had met with Lightner a few times.
 

 Mr. Santos and Mr. Fernandez met and discussed at length the history of the case; the abandoned alibi defense (including the testimony of Ms. Peoples and the difficulty in contacting Ms. Wallace); the second defense strategy; the second set of defense witnesses (Mr. Wallace and Mr. Tucker); and what those witnesses would say if called at trial.- Mr. Fernandez told Mr. Santos that he had spoken with Mr. Wallace and Mr. Tucker (and that Mr. Tucker’s deposition had been taken and transcribed). Mr. Fernandez told Mr. Santos the conclusions he reached, following his investigation and Mr. Tucker’s deposition, regarding whether to call these witnesses at trial. Mr. Santos, in reliance upon the investigation and information provided by Mr. Fernandez, did not call Mr. Wallace or Mr. Tucker to testify at trial'.
 

 According to Mr. Santos, Lightner was very satisfied with the defense of the case and with Mr. Santos’ performance during the trial itself, including the decision not to present any defense witnesses. Lightner’s state of satisfaction changed only after the jury returned its verdicts.
 

 III. DISCUSSION
 

 Lightner’s assertion, reduced to its essence, is that Mr. Santos’ performance was deficient because he failed to conduct his own independent investigation of the two witnesses (Mr. Wallace and Mr. Tucker) and instead relied upon the investigation conducted by previous counsel. We disagree.
 

 Any analysis of a claim of actual ineffective assistance of trial counsel necessarily begins with
 
 Strickland v. Washington,
 
 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A claim under
 
 Strickland
 
 requires the defendant to establish two prongs: constitutionally deficient performance and actual prejudice. As the
 
 Strickland
 
 Court elaborated:
 

 First, the defendant must show that counsel’s performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the “counsel” guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel’s errors were so serious as to
 
 *286
 
 deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
 

 Id.
 
 at 687, 104 S.Ct. 2052.
 

 In assessing the deficient performance prong, the relevant question is: Did counsel’s performance fall below an objective standard of reasonableness, when measured under prevailing professional norms?
 
 Id.
 
 at 688, 104 S.Ct. 2052.
 

 In assessing the actual prejudice prong, the relevant question to ask: But for counsel’s deficient performance, is there a reasonable probability, of a different result?
 
 Id.
 
 at 694, 104 S.Ct. 2052.
 

 A. Strickland’s guiding principles
 

 Strickland
 
 provides several guiding principles when determining whether a defendant can satisfy the deficient performance and actual prejudice prongs:
 

 1. The defendant has the burden of establishing both prongs. If the defendant fails to establish one prong, the court need not analyze the other prong and the defendant’s claim must fail.
 
 Id.
 
 at 687, 104 S.Ct. 2052.
 
 [2]
 

 2. “Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.”
 
 Id.
 
 at 690, 104 S.Ct. 2052.
 

 8. “A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel’s challenged conduct, and to evaluate the conduct from counsel’s perspective at the time.”
 
 Id.
 
 at 689, 104 S.Ct. 2052.
 

 4. “Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.”
 
 Id.
 

 5. “Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel’s judgments.”
 
 Id.
 
 at 691, 104 S.Ct. 2052.
 

 B. Reasonable investigation
 

 In determining whether counsel’s underlying investigation is reasonable under
 
 Strickland,
 
 the court should consider several factors, including:
 

 1. The nature, scope and extent of counsel’s investigation.
 
 Wiggins v. Smith,
 
 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003);
 
 Burger v. Kemp,
 
 483 U.S. 776, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987).
 

 2. The amount of time and resources available to conduct or pursue the investigation.
 
 Thomas v. Gilmore,
 
 144 F.3d 513, 515 (7th Cir.1998) (“A reasonable investigation is not ... the investigation that the best criminal defense lawyer in the world, blessed not only with unlimited time and resources but also with the ines
 
 *287
 
 timable benefit of hindsight, would conduct.”);
 
 Waters v. Thomas,
 
 46 F.3d 1506, 1514 (11th Cir.1995) (“That other witnesses could have been called or other testimony elicited usually proves at most the wholly unremarkable fact that with the luxury of time and the opportunity to focus resources on specific parts of a made record, post-conviction counsel will inevitably identify shortcomings in the performance of prior counsel.”)
 

 3. The defendant’s own statements and actions, and the extent of defendant’s cooperation with counsel.
 
 Strickland,
 
 466 U.S. at 691, 104 S.Ct. 2052.
 

 4. The reasons for limiting or abandoning a particular investigation or defense.
 
 Rompilla v. Beard,
 
 545 U.S. 374, 383, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005) (“[T]he duty to investigate does not force defense lawyers to scour the globe on the off chance something will turn up; reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste.”).
 

 5. Whether counsel considered alternatives before making the decision at issue.
 
 Occhicone v. State,
 
 768 So.2d 1037 (Fla.2000).
 

 6. Whether the defendant was informed about and agreed with counsel’s decisions or strategy.
 
 Stein v. State,
 
 995 So.2d 329, 337 (Fla.2008) (“[I]t is axiomatic that if a defendant consents to defense counsel’s trial strategy after it had been explained to him, it will be difficult to establish a claim for ineffective assistance of counsel,” (citing
 
 Gamble v. State,
 
 877 So.2d 706, 714 (Fla.2004))).
 

 Applying these factors to the instant case, we. determine that the trial court correctly concluded that Mr. Fernandez’s investigation was reasonable. Mr. Fernandez represented Lightner for seventeen months. For most of that time, Lightner’s professed defense was an alibi. Mr. Fernandez based his actions and investigation on the information provided by Lightner. Mr. Fernandez spent considerable time, effort and resources following up on the information provided by his client, contacting the alibi witnesses, verifying their availability, willingness and usefulness. As it turned out, of course, Lightner provided his counsel with an initial defense that was wholly fictitious, forcing, counsel to expend precious time, energy and resources on this ill-fated strategy.
 

 Lightner thereafter changed the nature of his defense, providing Mr. Fernandez with two new witnesses who would (Lightner claimed) testify that Lightner was present before the crime but left the scene before its commission. The trial court correctly determined that Mr. Fernandez’s investigation of this defense (and his pursuit of these newly-disclosed witnesses) was reasonable as well. Following up on the information provided by Light-ner, Mr. Fernandez determined that these witnesses were either unwilling to testify, would not provide helpful testimony, or would commit perjury. He made the decision not to call Mr. Wallace or Mr. Tucker as witnesses, and advised Lightner of this decision, a decision with which Lightner did not disagree. Ultimately, Mr. Fernandez’s. withdrawal from the case (and the appointment of new counsel) was a direct result of Lightner’s actions in providing witnesses whom Fernandez believed would provide perjured testimony if called to testify at trial.
 

 Mr. Santos’ reliance upon that investigation was likewise reasonable. It would
 
 *288
 
 strain credulity to conclude that Mr. Fernandez’s withdrawal (following a reasonable investigation, the details of which he shared with successor counsel who he has known and worked with for several years), would automatically impose upon successor counsel an independent duty to conduct the entire investigation anew.
 

 IV. CONCLUSION
 

 Given the reasonable investigation by Mr. Fernandez, and the fact that Mr. Santos discussed the details of that investigation with him and determined that further investigation would not bear additional fruit, Mr. Santos’ actions in reliance on the completed investigation were reasonable under prevailing professional norms. As a result, the strategic decisions made by Mr. Santos (which Lightner had no disagreement with until the conclusion of the trial) are themselves presumptively reasonable and “virtually unchallengeable.”
 
 Strickland,
 
 466 U.S. at 690-91, 104 S.Ct. 2052. Lightner can rebut this presumption of reasonableness only by establishing that no competent attorney would have made the same decision.
 
 White v. State,
 
 729 So.2d 909, 912 (Fla.1999). This Lightner cannot do.
 

 Affirmed.
 

 [1]
 

 . We find the other issues raised by Lightner are without merit and warrant no further discussion.
 

 [2]
 

 . Because Lightner could not meet his burden of establishing deficient performance, we do not address the prejudice prong of
 
 Strickland.